**Charles J. COLLINS and Christina A. Collins, Plaintiffs–Appellants,**

**v.**

**DePAUL HOSPITAL, a Wyoming corporation, Defendant–Appellee.**

**and**

**Wyoming Hospital Association, a Wyoming non-profit corporation, Amicus Curiae in support of the Appellee.**

**American Hospital Association, Amicus Curiae in support of the Appellee.**

**No. 91–8010.**

United States Court of Appeals, Tenth Circuit.

April 28, 1992.

Nicholas Vassallo (Harold F. Buck of Buck Law Offices with him on the brief), Cheyenne, Wyo., for plaintiffs-appellants.

Richard B. Caschette (and Douglas J. Cox of Cooper & Kelley, P.C., Denver,

Colo., and James L. Applegate of Hirst & Applegate, Cheyenne, Wyo., with him on the brief), for defendant-appellee.

J. Kent Rutledge of Lathrop & Rutledge, P.C., Cheyenne, Wyo., for Wyoming Hosp. Ass'n, amicus curiae.

Fredric J. Entin, Jeffrey M. Teske, and Tracey L. Fletcher, Chicago, Ill., for American Hosp. Ass'n, amicus curiae.

Before HOLLOWAY and McWILLIAMS, Circuit Judges, and CAUTHRON, District Judge.*

McWILLIAMS, Circuit Judge.

By amended complaint, Charles J. Collins and his wife, Christina A. Collins, brought suit in the United States District Court for the District of Wyoming against DePaul Hospital, a Wyoming corporation which maintains and operates a hospital in Cheyenne, Wyoming, alleging a violation of the Emergency Medical Treatment and Active Labor Act, sometimes referred to as COBRA. 42 U.S.C. § 1395dd, *et seq.*[1]

From the amended complaint we learn that Charles Collins was involved in an accident on April 3, 1988, and sustained serious injuries therein, including a fractured skull, a collapsed lung and a fractured acetabulum (hip). On that same day, Collins was taken to the DePaul Hospital, which had an emergency department, where he received emergency medical examination and treatment.

The gist of the amended complaint is that although the hospital and its staff may have appropriately diagnosed and treated his other injuries, they failed to take an X-ray of his right hip until April 28, 1988, which X-ray revealed for the first time a fractured hip. Collins further alleged that notwithstanding the discovery of his hip injury on April 28, 1988, he was discharged from the hospital the same day at a time when he was in an unstabilized condition and was simply told to see another physician on an outpatient basis. As a direct result of the hospital's failure to detect on or about April 3, 1988, his fractured hip and to then provide treatment therefor, Collins alleged that he has sustained permanent loss of length in his right leg, and further that, because of the delay in detecting the hip injury, he lost the opportunity to have his hip reconstructed and now has a fused hip. By amended answer, the hospital denied liability and later, after discovery, moved for summary judgment, to which no response was filed. After hearing, the district court granted the hospital's motion for summary judgment and later, after hearing, denied a motion to alter or amend. Collins appeals.

On appeal, Collins in his brief frames the one issue to be resolved on appeal as follows:

Whether 42 U.S.C. § 1395dd requires a hospital to provide all patients who come to its emergency room with an adequate medical screening to determine whether the patient has an emergency medical condition.

Collins argues that the issue he poses should be answered in the affirmative and that summary judgment for the hospital should be reversed and the case remanded and that his COBRA claim should be resolved by a jury. As we understand it, the hospital agrees that the issue, as framed by Collins, should be answered "yes," but asserts that it did comply with COBRA, and that Collins' proceeding in federal court is in reality a federal medical malpractice suit which is not contemplated by COBRA.[2]

The COBRA statutes with which we are here concerned are 42 U.S.C. § 1395dd(a),

---

* Honorable Robin J. Cauthron, United States District Judge for the Western District of Oklahoma, sitting by designation.

1. § 1395dd was enacted as a part of the Consolidated Omnibus Budget Recommendation Act of 1986, which gives rise to the acronym COBRA. Pub.L. No. 99–272, § 9121, 100 Stat. 82, 164–67 (1986).

2. We are advised that prior to the commencement of the present COBRA action in federal district court, Collins did in fact file a medical malpractice action in a state court of Wyoming against the hospital and one of its staff doctors, which action resulted in a jury verdict in favor of the hospital, the jury making a finding that neither the hospital nor its staff doctor was negligent in their treatment of Collins.

(b) and (c), as in effect on April 3, 1988, which read as follows:

### § 1395dd. Examination and treatment for emergency medical conditions and women in active labor

#### (a) Medical screening requirement

In the case of a hospital that has a hospital emergency department, if any individual (whether or not eligible for benefits under this subchapter) comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, *the hospital must provide for an appropriate medical screening examination* within the capability of the hospital's emergency department *to determine whether or not an emergency medical condition* (within the meaning of subsection (e)(1) of this section) *exists* or to determine if the individual is in active labor (within the meaning of subsection (e)(2) of this section) (emphasis added).

#### (b) Necessary stabilizing treatment for emergency medical conditions and active labor

#### (1) In general

If any individual (whether or not eligible for benefits under this subchapter) comes to a hospital *and the hospital determines that the individual has an emergency medical condition,* or is in active labor, the hospital must provide either—

> (A) within the staff and facilities available at the hospital, for such further medical examination and such treatment *as may be required to stabilize the medical condition,* or to provide for treatment of the labor, or

> (B) for transfer of the individual to another medical facility in accordance with subsection (c) of this section (emphasis added).

\* \* \* \* \* \*

#### (c) Restricting transfers until patient stabilized

#### (1) Rule

If a patient at a hospital has an emergency medical condition which has not been stabilized (within the meaning of subsection (e)(4)(B) of this section), the hospital may not transfer the patient unless—

Paraphrasing the above-referenced statute, we read it to require that when a participating hospital has an emergency department, if "any individual" comes, or is brought, to such emergency department and requests, or a request is made on his or her behalf, for an examination or treatment of a medical condition, the hospital "must provide for an appropriate medical screening examination ... to determine whether or not an emergency medical condition ... exists" and if the hospital determines that the individual has an "emergency medical condition" it must provide either (1) within its staff and facilities for such further medical examination and treatment as is required "to stabilize the medical condition," and if the medical condition has not been stabilized, the hospital, subject to certain exceptions not applicable in the instant case, may not transfer the individual elsewhere, or (2) transfer the individual to another medical facility in accordance with another provision of the statute.

As indicated earlier, on appeal Collins states in his brief that the only issue in the case is whether 42 U.S.C. § 1395dd requires a hospital to provide any person who comes to its emergency room with an adequate medical screening to determine whether the person has an "emergency medical condition." Accordingly, we are not here concerned with the COBRA provision requiring that a person whom the hospital determines does have "an emergency medical condition" be further examined and treated and his, or her, condition "stabilized" before transfer or discharge. This latter situation was suggested in Collins' amended complaint, but that particular claim has apparently been abandoned along the way. The district court in its order did not address that particular matter, and, as stated, the issue on appeal does not include the "discharge before stabilization" issue. Accordingly, the only matter argued on appeal concerns 42 U.S.C. § 1395dd(a), i.e.,

the requirement that there be an "appropriate medical screening" when a person presents himself to a hospital's emergency department for the purpose of determining "whether or not an emergency medical condition exists."

The background facts out of which this dispute arises, as set forth in the amended complaint and as expanded upon in the several depositions, discloses that on April 3, 1988, Collins was thrown from an all-terrain vehicle and sustained life threatening injuries. He was brought by ambulance to DePaul Hospital in an unconscious condition and immediately admitted to the emergency room. His injuries were diagnosed as including numerous abrasions and lacerations, a shoulder injury, pulmonary problems, chest and head injury, including a severe brain injury. A neurosurgeon treated and evaluated Collins' brain injury. Collins was then admitted to the hospital's Intensive Care Unit (ICU) on the same day and surgery was performed. Collins' life hung in the balance on April 3, 1988. He remained in ICU until April 18, 1988. During this period of time, Collins received continuous care and treatment for his injuries. Eventually Collins regained consciousness and on April 18, 1988, he was transferred out of ICU to the general surgery floor of the hospital where he remained until his discharge from the hospital on April 29, 1988.

During the first part of his hospitalization, Collins did not communicate in any meaningful way with the attending doctors. However, as his brain injury slowly improved and he began to move around, he began to complain about his right hip. On April 28, 1988, a hip X-ray was taken and revealed a fracture of the right acetabulum (hip).[3] Although in his brief Collins alleged that he was discharged on April 28, 1988, the day the hip X-ray was taken, it appears that actually on April 28, 1988, he was sent home on an overnight pass and that he in fact returned to DePaul Hospital on the morning of April 29, 1988, when a CAT scan was taken of his hip, and the attending doctor discussed Collins' hip injury with a local Cheyenne orthopedic surgeon. After reviewing Collins' medical condition, Collins was then discharged on April 29, 1988, with instructions to have follow-up treatment by the orthopedic surgeon. In May, 1988, Collins was referred by the Cheyenne orthopedic surgeon to an orthopedic surgeon residing in Denver, Colorado, and on June 28, 1988, a right hip fusion was performed at University Hospital, in Denver, Colorado.

On appeal, Collins' basic position is that if the hospital had X-rayed his right hip on April 3, 1988, the fracture would have been discovered and the hip could have then been reconstructed, but that by not X-raying his hip until April 28, 1988, when the fracture was discovered, he was precluded, from a medical standpoint, from having his hip reconstructed, and eventually he was forced to have a hip fusion and that as a result his right leg is shorter than his left leg, all of which, he claims, constitutes a violation of 42 U.S.C. § 1395dd(a) by the hospital. In the words of the statute, Collins claims that when he was brought by ambulance to DePaul Hospital in an unconscious condition on April 3, 1988, he was not provided "an appropriate medical screening examination ... to determine whether or not an emergency medical condition ... exists" because of the failure of the hospital to X-ray his right hip. In our view, the fact that the hospital did not X-ray Collins' right hip on April 3, 1988, does not give rise to a civil enforcement action by Collins under COBRA. The district court did not err in granting DePaul Hospital summary judgment.

The stated reason in 42 U.S.C. § 1395dd(a) for requiring a participating hospital to provide an "appropriate medical screening examination" of one suffering from injuries who presents himself at a

---

**3.** In our resolution of this appeal we accept as true counsel's assertion that ordinarily a person with Collins' injuries would have had a hip X-ray upon his arrival at the emergency room and that in fact the staff at DePaul Hospital thought Collins had his hip X-rayed on April 3, 1988, although he had not, and further that if the fractured hip had been detected on April 3, 1988, the hip could have been reconstructed.

hospital is to determine whether an "emergency medical condition exists." [4] Nothing more, nothing less. After the hospital made its screening examination of Collins, it is quite obvious that it determined that an "emergency medical condition" did exist.[5] After its examination, the hospital did not send him home. Rather it placed him in ICU, and treated him for the next 26 days. Such is not in dispute, and, in our view, in and of itself defeats any claim of Collins based on 42 U.S.C. § 1395dd(a). We agree that DePaul Hospital complied with the obligation placed on it by § 1395dd(a).

In support of our analysis of this matter, see such cases as *Gatewood v. Washington Healthcare Corp.*, 933 F.2d 1037 (D.C.Cir. 1991), and *Cleland v. Bronson Health Care Group, Inc.*, 917 F.2d 266 (6th Cir. 1990). In *Gatewood* the plaintiff's deceased husband was allegedly misdiagnosed in the hospital's emergency room and sent home, where he died the following day. The widow brought an action in federal district court alleging a violation of 42 U.S.C. § 1395dd(a). In upholding the district court's dismissal of the action on motion for summary judgment, the District of Columbia Circuit asserted that COBRA does not create a "broad federal cause of action for negligence or malpractice in the emergency room." *Gatewood* at 1039. And such was true even though the emergency room doctors in *Gatewood* obviously found no "emergency medical condition" and in fact sent the patient home. In our case, the emergency room of DePaul Hospital obviously determined that Collins was in an emergency medical condition, as they put him ICU and treated him for 26 days. Further, the District of Columbia Circuit in *Gatewood* held that 42 U.S.C. § 1395dd(a) is not intended "to ensure each emergency

room patient a correct diagnosis, but rather to ensure that each is accorded the same level of treatment regularly provided to patients in similar medical circumstances." *Id.* at 1041.

In *Cleland*, as in *Gatewood*, there was an incorrect diagnosis in the emergency room and a 15–year–old boy was sent home and in less than 24 hours died. In *Cleland*, the Sixth Circuit affirmed the district court's dismissal of the parents' action for failure to state a claim under 42 U.S.C. § 1395dd(a). In so doing, the Sixth Circuit rejected a suggestion that the "appropriate medical screening" language in 42 U.S.C. § 1395dd(a) encompasses the "full panoply of state medical malpractice law." *Cleland* at 271. The Sixth Circuit also indicated that even though there might be a misdiagnosis in the emergency room such would not necessarily show that the medical screening procedures for emergency patients were "inappropriate." Be that as it may, the patient in *Cleland* was discharged after the medical screening process, whereas in our case after the medical screening process Collins was kept at the hospital for some 26 days where he received continuous treatment.

Collins' reliance on *DeBerry v. Sherman Hospital Association*, 741 F.Supp. 1302 (N.D.Ill.1990), is in our view misplaced. That was a case of a misdiagnosis in the emergency room where the patient was sent home. There, unlike the present case, the federal claim was based on the "discharge before stabilization" language of 42 U.S.C. § 1395dd(b) and (c). However, in denying a motion to dismiss under Fed. R.Civ.P. 12(b)(6), the district court in *DeBerry* commented as follows:

Basic textual analysis of these provisions yields two primary ways in which a hospital can violate § 1395dd through the

---

**4.** In *Stevison v. Enid Health Systems, Inc.*, 920 F.2d 710 (10th Cir.1990), where a thirteen-year-old left the hospital without receiving any "medical screening examination," we stated that 42 U.S.C. § 1395dd(a) requires a participating hospital to "provide a medical screening to any person requesting treatment to determine whether an emergency exists [and] [i]f treatment is required, the hospital must stabilize the patient's condition prior to transfer."

**5.** The statute requires the hospital through an "appropriate medical screening examination ... to determine whether or not *an* emergency medical condition ... exists" [emphasis added]. We do not read the statute to require a hospital to determine, and identify, *all* of the emergency medical conditions from which a particular individual may be suffering.

operation of its emergency room. But a prerequisite to both is that the patient in question must have had an emergency medical condition. Once it is established that the plaintiff showed up at the hospital's emergency room with an emergency medical condition, the hospital can violate § 1395dd either (1) by failing to detect the nature of the emergency condition through inadequate screening procedures under subsection (a), or, (2) under subsection (b), if the emergency nature of the patient's condition is detected, by failing to stabilize the condition before releasing the plaintiff. Whether either of these failures has occurred is essentially a fact-based reasonableness inquiry. This straightforward exegesis of § 1395dd's language is supported by two of four cases which have addressed the elements of a cause of action under the statute. (Citations omitted.)

*DeBerry* at 1305.

As previously indicated, we are not here concerned with any claim that DePaul Hospital failed to stabilize Collins' condition before he was discharged on April 29, 1988. As indicated, though that type of claim was alleged in the amended complaint, it was apparently abandoned in the district court and is not asserted on appeal. And, under the undisputed facts, this is *not* a case where the hospital failed to detect Collins' emergency medical condition because of inappropriate screening procedures. DePaul Hospital did detect Collins' emergency medical condition and placed him in ICU and treated him for 26 days.

█ We do agree with counsel that the fact that Collins was non-indigent, i.e., he could and did pay his medical and hospital bills, does not defeat his COBRA action. *See Gatewood, supra,* and *Cleland, supra.* 42 U.S.C. § 1395dd(a) encompasses, by its terms, "any individual (whether or not eligible for benefits under this subchapter)...." The fact that Congress, or some of its members, viewed COBRA as a so-

called "anti-dumping" bill, i.e., a bill designed to prohibit hospitals from "dumping" poor or uninsured patients in need of emergency care, does not subtract from its use of the broad term "any individual."

In sum, DePaul Hospital in screening Collins on April 3, 1988, did determine that he had an emergency medical condition.[6] This is self-evident. Collins was unconscious and near the point of death. He of course was not "sent home," as was the patient in *Gatewood, Cleland,* and *DeBerry.* Rather, he was treated for 26 days. Such defeats an action based on 42 U.S.C. § 1395dd(a) and summary judgment for the hospital was appropriate. If there was any medical malpractice along the way, Collins had the right to institute a medical malpractice action in state court, which he did, and lost.

Judgment affirmed.

---

**6.** In resisting Collins' motion to alter or amend judgment, DePaul Hospital for the first time claimed that collateral estoppel barred the present action, based on the state court proceed-

ing where Collins' malpractice action was dismissed. The district court did not rule on that matter, nor do we.