**Mason E. GREEN, Plaintiff,**

v.

**S.V. REDDY, M.D., Ivan H. Carper, M.D., and Susan B. Allen Memorial Hospital, Defendants.**

No. 94–1176.

United States District Court, D. Kansas.

Jan. 10, 1996.

Troy H. Gott, Arden J. Bradshaw, Bradshaw, Johnson & Hund, Wichita, KS, for Mason E. Greene.

M. Warren McCamish, Williamson & Cubbison, Kansas City, KS, for S.V. Reddy, M.D.

Kenneth C. Havner, Hays, KS, for Ivan H. Carper, M.D.

Reid F. Holbrook, Thomas M. Sutherland, Holbrook, Heaven & Fay, P.A., Kansas City, for Susan B. Allen Memorial Hosp.

**332**

## MEMORANDUM AND ORDER

VRATIL, District Judge.

On May 13, 1994, plaintiff Mason Greene filed this suit against Dr. S.V. Reddy, Dr. Ivan H. Carper, and Susan B. Allen Memorial Hospital, asserting federal question jurisdiction under the Emergency Medical Treatment and Active Labor Act [EMTALA], 42 U.S.C. § 1395dd *et seq.* Plaintiff also asserts numerous claims of negligence based on state law. This matter comes before the Court on the *Motion For Partial Summary Judgment of Defendant Susan B. Allen Memorial Hospital* (Doc. # 44) filed March 20, 1995. Susan B. Allen Memorial Hospital ["the Hospital"] argues that plaintiff has not stated an actionable claim under the EMTALA and that, because federal jurisdiction is premised exclusively on that statute, the Court lacks subject matter jurisdiction over plaintiff's remaining state law claims. In short, the Hospital asks the Court to enter summary judgment on plaintiff's EMTALA claim and dismiss the balance of plaintiff's action.

For reasons stated more fully below, the Court finds that the Hospital's position is well taken and that its motion should be sustained.

### Summary Judgment Standards

■ Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a "judgment as a matter of law." Fed.R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986); *Vitkus v. Beatrice Co.,* 11 F.3d 1535, 1538–39 (10th Cir.1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. A "genuine" factual dispute requires more than a mere scintilla of evidence. *Id.* at 252, 106 S.Ct. at 2512.

■ The moving party bears the initial burden of showing that there is an absence of any genuine issue of material fact. *Celotex*
*Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Hicks v. City of Watonga, Okla.,* 942 F.2d 737, 743 (10th Cir.1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Securities, Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir.1991). The nonmoving party may not rest on its pleadings but must set forth specific facts. *Applied Genetics,* 912 F.2d at 1241.

■ "[W]e must view the record in the light most favorable to the parties opposing the motion for summary judgment." *Deepwater Investments, Ltd. v. Jackson Hole Ski Corp.,* 938 F.2d 1105, 1110 (10th Cir.1991). Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative. *Anderson,* 477 U.S. at 250–51, 106 S.Ct. at 2511–12. "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith,* 853 F.2d 789, 793 (10th Cir.1988). Where the nonmoving party fails to properly respond to the motion for summary judgment, the facts as set forth by the moving party are deemed admitted for purposes of the summary judgment motion. D.Kan.Rule 56.1. Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson* at 251–52, 106 S.Ct. at 2511–12. Ever mindful of these summary judgment standards, we now turn to the merits of defendant's motion.

### Undisputed Facts

■ Summary judgment procedure is governed by D.Kan.Rule 56.1, which states that

a memorandum or brief in support of a motion for summary judgment "shall begin with a section that contains a concise statement of material facts as to which the movant contends no genuine exists." It also requires that an opposing memorandum begin with a section that contains a "concise statement of material facts as to which the party contends a genuine issue exists." Each fact must be numbered and refer with particularity to those portions of the record upon which the party relies. Also, in responding, the non-moving party shall state the "number" of each of movant's facts that is disputed. *All* facts on which either party relies must be organized by and contained within numbered paragraphs, and *all* operative facts must be captured within the parties' statement of uncontroverted facts and response thereto.

Neither the Hospital nor the plaintiff has complied with D.Kan.Rule 56.1 in this case. In formulating the following statement of uncontroverted facts, the Court has disregarded all purported facts which are not set forth in the manner required by D.Kan.Rule 56.1. More specifically, the Court has disregarded all purported "facts" and "disputed facts" which are located elsewhere than in numbered paragraphs.

With that explanation, the Court finds that the following facts are undisputed or, where disputed, are construed in favor of plaintiff:

On August 27, 1993, plaintiff sustained injuries in a motorcycle accident in rural Butler County, Kansas. Following the accident, at approximately 7:41 p.m., plaintiff arrived at the emergency room at Susan B. Allen Memorial Hospital, where Doctors Carper and Reddy provided care and treatment for his multiple injuries. Defendants then admitted plaintiff to the Hospital's intensive care unit for further evaluation and treatment. Dr. Carper testified that he treated plaintiff in the same manner he would have treated any other patient in plaintiff's same or similar condition.[1]

The following morning, August 28, 1993, at his mother's request, plaintiff transferred to Wesley Medical Center in Wichita. Dr. Harrison agreed to take responsibility for plaintiff's care at Wesley Medical Center.

Plaintiff seeks compensation for loss of his left kidney and related damages allegedly arising from the care and treatment rendered at the Hospital. In general, plaintiff claims that defendants failed to timely test, diagnose, and treat a collapsed lung and torn renal artery, resulting in the destruction of blood supply and eventual loss of his left kidney. Plaintiff claims that the Hospital violated the EMTALA in (a) failing to provide an appropriate screening examination in the emergency room; (b) upon finding that plaintiff had an emergency medical condition, failing to provide appropriate stabilizing treatment; and (c) upon finding that plaintiff had an emergency medical condition, failing to properly transfer him to another hospital. See *Plaintiff's Response to Defendant Susan B. Allen Memorial Hospital's Motion For Partial Summary Judgment* (Doc. # 55) filed April 18, 1995, at 12–20; *Complaint* (Doc. # 1) filed May 13, 1994, at 8–9.

### Analysis

In 1986, Congress enacted the EMTALA in response to a growing concern that hospitals were "dumping" patients who were unable to pay, either by refusing to provide emergency medical treatment or by transferring patients before their emergency conditions were stabilized. *Brooks v. Maryland General Hospital, Inc.,* 996 F.2d 708, 710 (4th Cir.1993); *Griffith v. Mt. Carmel Medical Center,* 831 F.Supp. 1532, 1538–39 (D.Kan.1993). In *Collins v. DePaul Hospital,* 963 F.2d 303 (10th Cir.1992), the Tenth Circuit Court of Appeals summarized the general duties which the EMTALA imposes, as follows:

> [W]hen a participating hospital has an emergency department, if "any individual" comes, or is brought, to such emergency department and requests, or a request is made on his or her behalf, for an examination or treatment of a medical condition,

---

1. Plaintiff argues that he is entitled to a "reasonable inference" that the jury will disbelieve this testimony because Dr. Carper's memory is faulty. The Court finds nothing in the factual record which is properly before it that gives rise to the "reasonable inference" which plaintiff advocates in this regard.

the hospital "must provide for an appropriate medical screening examination ... to determine whether or not an emergency medical condition ... exists" and if the hospital determines if the individual has an "emergency medical condition" it must provide either (1) within its staff and facilities for such further medical examination and treatment as is required "to stabilize the medical condition," and if the medical condition has not been stabilized, the hospital, subject to certain exceptions not applicable in the instant case, may not transfer the individual elsewhere, or (2) transfer the individual to another medical facility in accordance with another provision of the statute.

963 F.2d at 305. In other words, EMTALA imposes several types of requirements: (1) that the hospital emergency room conduct an appropriate medical screening examination to determine whether an emergency medical condition exists; and (2) if the patient has an emergency medical condition, either provide stabilizing treatment or transfer the patient to another medical facility, in compliance with the EMTALA, for treatment. *Abercrombie v. Osteopathic Hospital Founders Ass'n.*, 950 F.2d 676, 680 (10th Cir.1991).

### A. *Improper Screening Claim*

Under 42 U.S.C. § 1395dd(a), the hospital emergency room must provide "an appropriate medical screening examination" to determine whether an "emergency medical condition" exists. An "emergency medical condition," as defined in § 1395dd(e)(1)(A), is "a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in—(i) placing the health of the individual ... in serious jeopardy, (ii) serious impairment to bodily functions, or (iii) serious disfunction of any bodily organ or part."

Plaintiff complains that defendant's emergency room staff did not conduct the urinalysis "normally performed on trauma patients," thereby rendering his medical screening examination inappropriate. More specifically, plaintiff claims that lack of a urinalysis caused the emergency room staff to accurately diagnose "relatively minor injuries" but *fail* to diagnose the collapsed lung and torn renal artery.[2] The Hospital argues that plaintiff presents no genuine issue with respect to "appropriate medical screening" because once it determined that he had an emergency medical condition and admitted him to the intensive care unit, any EMTALA claim for improper screening was extinguished. Plaintiff replies that even though the Hospital transferred him from the emergency room to the intensive care unit, "the weight of the evidence" contradicts the Hospital's argument that it diagnosed an emergency medical condition and a jury "may very well find to the contrary."[3]

Plaintiff misconstrues both the law and the relevant facts. *Collins v. DePaul Hospital* disposes of plaintiff's fanciful argument that the Hospital never believed he had an emergency medical condition. See 963 F.2d at 306–307. The Hospital obviously believed that plaintiff had sufficiently acute symptoms to warrant hospitalization in the intensive care unit. The fact that plaintiff's mother preferred the ICU to the regular hospital floor does not impugn the Hospital's determination in this regard.

Moreover, *Collins* makes it quite clear that the sole legal purpose of the medical screening examination is to determine whether an emergency medical condition exists: "Nothing more, nothing less." 963 F.2d at 307. The fact that the Hospital placed plaintiff in the intensive care unit and treated him there defeats any claim under § 1395dd(a). *Id.*

---

**2.** None of the facts upon which this argument depends are properly delineated in compliance with D.Kan.Rule 56.1. For reasons stated above, the Court therefore disregards them.

**3.** The argument that Dr. Reddy "failed to diagnose the true emergency conditions" and admitted plaintiff to the ICU only at the insistence of

plaintiff's mother finds no support in facts which are properly presented to the Court. The record contains no evidence that the Hospital's decision to admit plaintiff (to the ICU or elsewhere) was pretextual and that it did not believe that he had an emergency medical condition independent of any collapsed lung or torn renal artery.

Finally, plaintiff pleads in Count V of the complaint that the Hospital determined that he had an emergency medical condition. Having done so, he cannot argue under § 1395dd(a) that he did not receive an appropriate medical screening to determine whether an emergency medical condition existed. *Foster v. Lawrence Memorial Hospital*, No. 91–1151–C, 1992 WL 266888, *10 (D.Kan. Sept. 11, 1992).

### B. *Stabilization prior to discharge*

■ Under the EMTALA, if a hospital determines that an emergency room patient has an emergency medical condition, it must *either* (1) through its staff and available facilities provide the medical treatment necessary to stabilize the patient's medical condition; or (2) transfer the individual to another medical facility in accordance with § 1395dd(c). The stabilization and transfer requirements do not operate unless the hospital actually diagnoses the emergency medical condition. *E.g., Baber v. Hospital Corp. of America*, 977 F.2d 872, 883 (4th Cir.1992); *Gatewood v. Washington Healthcare Corp.*, 933 F.2d 1037, 1041 (D.C.Cir.1991). If the emergency nature of the condition is not detected, the hospital cannot be charged with failure to stabilize a known emergency condition. *Baber v. Hospital Corp.*, 977 F.2d at 883; *Cleland v. Bronson Health Care Group, Inc.*, 917 F.2d 266, 271–72 (6th Cir.1990); *Griffith v. Mt. Carmel Medical Center*, 831 F.Supp. at 1543.

■ Plaintiff alleges that the Hospital, upon finding that he had an emergency condition, failed to treat or stabilize that condition. *Complaint* (Doc. # 1) filed May 13, 1994, at ¶ 30(b) and (c). Plaintiff's argument on this point, as set forth on pages 16 through 19 of *Plaintiff's Response To Defendant Susan B. Allen Memorial Hospital's Motion For Partial Summary Judgment* (Doc. # 55) filed April 18, 1995, is incomprehensible. Plaintiff first argues that the Hospital did not stabilize his emergency medical condition "prior to transfer"—an issue that we later address. Plaintiff next argues that the *jury* must decide "when, *if ever*, the health care providers determined that [he] had an 'emergency medical condition' [em-

phasis added]." The import of this argument is unclear because (a) plaintiff alleges that the Hospital knew that he had an emergency medical condition, and (b) if the Hospital did not know that he had an emergency medical condition, it had no EMTALA duty to stabilize his condition and plaintiff's claim must fail. Alternatively, plaintiff argues that the jury might find that the Hospital failed to diagnose his emergency medical condition in the emergency room, but later diagnosed it in the intensive care unit. The gist of this argument is equally incomprehensible.

On this record, the Hospital is entitled to summary judgment on the claimed failure to stabilize. While the Hospital obviously knew that plaintiff had an emergency medical condition, plaintiff cites no evidence that the Hospital had specific knowledge of a torn renal artery or a collapsed lung before he transferred to Wesley Medical Center. Accordingly, the Court need not reach the question whether the Hospital violated the EMTALA by failing to stabilize those conditions prior to transfer.

### C. *Transfer*

■ As noted above, once a hospital has determined that an individual presenting to its emergency department has an "emergency medical condition," the hospital must either (1) within its staff and facilities available at the hospital, provide the medical treatment necessary to stabilize the individual's medical condition; or (2) transfer the individual to another medical facility in accordance with § 1395dd(c). Where a patient is transferred to another hospital, the issue becomes whether the patient was properly transferred and not whether the patient was stabilized. *Foster*, 1992 WL 266888 at *11. If a patient has an emergency medical condition which has not been stabilized, the hospital may not transfer the patient except (1) through the certification procedure set forth in § 1395dd(c)(1)(A)(ii) or (iii); or (2) upon request by the patient or a legally responsible person acting on the patient's behalf under § 1395dd(c)(1)(A)(i).

■ Plaintiff argues that the Hospital did not arrange an "appropriate" transfer because an appropriate transfer is one in

which the individual's medical condition is stabilized prior to transfer. This argument finds no legal support in the EMTALA. Plaintiff also argues that because he had an emergency medical condition which had not been stabilized, the Hospital could not transfer him to another facility without informing him of the risk, in writing, or pursuant to the certification procedure. Finally, plaintiff complains that at the time of transfer, the Hospital withheld certain records from Wesley Medical Center, *i.e.* nursing notes which reflected that plaintiff was suffering from severe flank pain and suprapubic pain, and had dark brown emesis which was hemocult positive.[4] See 42 U.S.C. § 1395dd(c)(2)(C).

As noted above, none of the "stabilization or transfer" requirements become operative unless the Hospital diagnosed the emergency medical condition of which plaintiff complains. *Baber v. Hospital Corp.*, 977 F.2d at 883; *Gatewood v. Washington Healthcare Corp.*, 933 F.2d at 1041; *Cleland v. Bronson Health Care Group, Inc.*, 917 F.2d at 271. Absent record evidence that the Hospital knew of plaintiff's torn renal artery or collapsed lung, the transfer provisions set forth in § 1395dd(e) and § 1395dd(c)(2)(C) do not apply. Accordingly, the Court finds no actionable issue with respect to the transfer procedure utilized in this case.

## CONCLUSION

■ The fact that the hospital may have failed to timely diagnose or detect plaintiff's kidney injury does not present an actionable claim under the EMTALA. Such allegations of negligence are governed by tort law and not the EMTALA. See *e.g., Baber v. Hospital Corp.*, 977 F.2d at 880 (in enacting the EMTALA, Congress did not intend to create negligence standard and, as such, the EMTALA is not a substitute for state law medical malpractice actions); *Nash v. Wilkinson*, No. 89–1544, 1992 WL 163666, *4 (D.Kan. June 19, 1992) (claims regarding diagnosis and treatment lie in the area of medical malpractice, an area traditionally relegated to state law); *Evitt v. University Heights*

*Hospital,* 727 F.Supp. 495, 497 (S.D.Ind. 1989). Under the circumstances, the Court must conclude that plaintiff has not stated an actionable claim under the EMTALA. Because plaintiff's only remaining claims are state law negligence claims, they are more properly adjudicated in state court. See *e.g. Pitts v. Turner and Boisseau, Chartered,* 850 F.2d 650, 653 (10th Cir.1988), *cert. denied,* 488 U.S. 1030, 109 S.Ct. 838, 102 L.Ed.2d 970 (1989).

**IT IS THEREFORE ORDERED** that the *Motion For Partial Summary Judgment of Defendant Susan B. Allen Memorial Hospital* (Doc. #44) filed March 20, 1995, be and hereby is sustained.

---

**4.** Once again, the facts which purportedly support this claim are not set forth in compliance with D.Kan.Rule 56.1.