# Icenhour v. Burke

C.P. of Beaver County, no. 10504 of 1996.

*John J. Petrush,* for plaintiffs.
*Jodi K. Innocent,* for defendant Medical Center.
*Michael J. Hudak,* for defendants Book, Burke, Snyder Surgical Association.

KUNSELMAN, *J.,* September 19, 1996—The preliminary objections of defendant, the Medical Center, Beaver, Pa. Inc., raise a question not heretofore addressed by the appellate courts of Pennsylvania. The issue is the application of the federal legislation known as the Emergency Medical Treatment and Active Labor Act, EMTALA, 42 U.S.C. §1395dd (West 1992), to claims against a hospital in state court. The factual background, taken from plaintiffs' complaint, follows.

On March 10, 1994, plaintiff-husband, Carl A. Icenhour, began experiencing severe pain in his chest and abdomen and went to the Medical Center's emergency room. There he was referred to defendant, Dr. Marshall L. Burke, who accepted plaintiff-husband as his patient and undertook to examine, evaluate and diagnose his condition. Based upon his findings, Dr. Burke recom-

mended an exploratory laparotomy to examine plaintiff-husband's abdominal cavity, and admitted him to the Medical Center. Following his surgery the next day, plaintiff-husband remained at the Medical Center until March 19, 1994. During his stay there, plaintiff-husband was seen and attended by Dr. Burke and his colleagues, defendants Dr. David C. Snyder and Dr. Morris M. Book.

Three days after his discharge, plaintiff-husband was seen at the office of defendant, The Book, Burke & Snyder Surgical Association. It was discovered at that time that plaintiff-husband's sternal incision from a coronary artery bypass performed shortly before his admission to the Medical Center and the abdominal incision from the exploratory laparotomy had been infected with the staphylococcus aureus bacteria, staph infection. At the time of the events herein described, the Medical Center participated in the Federal Medicare Program.

Plaintiffs filed the instant lawsuit setting forth claims for medical malpractice, in essence, based upon the defendants' failure to properly care for plaintiff-husband's incisions and diagnose the infections. In Counts 11 and 12, plaintiffs further allege claims against the Medical Center under EMTALA for plaintiff-husband's physical pain, permanent disfigurement, and mental anguish and for plaintiff-wife's loss of consortium.

In enacting EMTALA, Congress sought to address concerns about the increasing number of reports that *hospital emergency rooms* were refusing to accept or treat patients with emergency conditions or were improperly transferring patients who were medically unstable because the patient was uninsured. House Committee on Ways and Means, Comprehensive Omnibus Budget Reconciliation Act of 1986, H.R. Rep. no. 241,

99th Cong., 2nd sess. 27 (1986), *reprinted in* 1986 U.S.C.C.A.N. 605; see also, H.R. Rep. no. 241 99th Cong., lst sess. pt. 3, at 5 *reprinted in* 1986 U.S.C.C.A.N. at 726 (stating that "[t]he Judiciary Committee shares the concern of the Ways and Means Committee that appropriate *emergency room care* be provided to patients faced with medical emergencies and in active labor." (emphasis added)). Thus, Congress hoped to ensure that each patient would be accorded the same level of treatment ordinarily provided to patients in similar medical circumstances. *Griffith v. Mt. Carmel Medical Center,* 831 F. Supp. 1532, 1539 (D.Kan. 1993).

Accordingly, EMTALA imposes two principal obligations on hospitals in emergency cases. First, it requires that when an individual seeks treatment at a hospital's emergency room, the emergency department must provide for an appropriate medical screening examination, within that department's capabilities, to determine whether or not an emergency medical condition exists. 42 U.S.C. §1395dd(a). Second, if screening reveals the presence of an emergency medical condition, the hospital ordinarily must stabilize the medical condition before transferring or discharging the patient. 42 U.S.C. §1395dd(b)(1); see also, 42 U.S.C. §1395dd(e)(4). Transfers without stabilization of the patient may be made if certain conditions are met. 42 U.S.C. §1395dd(c).

In their complaint, plaintiffs aver that the Medical Center violated the EMTALA's provisions by failing to: (1) provide plaintiff-husband with an "appropriate medical screening" to determine whether an "emergency medical condition," *i.e.,* the staph infection in his abdominal incision, existed *at the time of discharge;* (2) provide such further treatment necessary to stabilize plaintiff-husband's medical condition; and (3) stabilize

plaintiff-husband's condition, yet discharging him without arranging for an appropriate transfer to another medical facility, or without obtaining a written request for discharge from plaintiff-husband containing the legally mandated information or complete the certification process so prescribed. In response, the Medical Center filed preliminary objections in the nature of a demurrer to these claims, which raise the issue of EMTALA's scope.

The Medical Center first challenges plaintiffs' claim for failure to screen plaintiff-husband for an emergency medical condition before discharging him on the basis that EMTALA does not require a medical screening upon a patient's discharge. For the following reasons, we agree.

Section 1395dd(a) of EMTALA provides:

"(a) Medical screening requirement

"In the case of a hospital that has a hospital *emergency department,* if any individual (whether or not eligible for benefits under this subchapter) comes to the *emergency department* and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital must provide for an appropriate medical screening examination within the capability of the hospital's *emergency department,* including ancillary services routinely available to the *emergency department,* to determine whether or not an emergency medical condition (within the meaning of subsection (e)(1) of this section) exists." 42 U.S.C. §1395dd(a). (emphasis added)

Congress' repeated reference to "emergency department" in this section clearly indicates that Congress sought to set forth a course of conduct which is to be followed in a hospital's *emergency department* only. There is no suggestion that these requirements extend beyond the circumstance where someone presents him-

self at the emergency department and requests examination for a potential emergency medical condition, except where ancillary services are necessary to assist the emergency department.

In the instant case, there is no allegation that plaintiff-husband did not receive an appropriate medical screening when he presented in the emergency room. To the contrary, plaintiffs allege that upon coming to the emergency room at the Medical Center, Dr. Burke examined, evaluated and diagnosed plaintiff-husband. Further, in order to treat his condition, Dr. Burke admitted plaintiff-husband to the Medical Center, and scheduled him for surgery the next day. Instead plaintiffs' claims arise out of the Medical Center's post-operative care of his abdominal incision, and not the events which transpired while plaintiff-husband was in the emergency room. Although we recognize that a staph infection could be considered an "emergency medical condition," we do not interpret section 1395dd(a) as imposing a continuing obligation upon a hospital, as plaintiffs would have us do, to screen for emergency medical conditions once the initial screening has been conducted in the emergency department and the patient is admitted.[1] Other courts have similarly concluded that once an emergency medical condition is detected upon a person's presentation at an emergency room and is subsequently admitted to the hospital, the requirements under section 1395dd(a) have been fulfilled. See *Collins v. DePaul Hospital,* 963 F.2d 303, 307 (10th Cir. 1992); *Green v. Ready,* 918 F. Supp. 329, 334 (D.Kan. 1996). These conclusions

---

1. However, this conclusion does not necessarily apply to sections 1395dd(b) and (c) of EMTALA. See *Thornton v. Southwest Detroit Hosp.,* 895 F.2d 1131 (6th Cir. 1990); *McIntyre v. Schick,* 795 F. Supp. 777 (E.D.Va. 1992).

are likewise in keeping with congressional intention as is evident from the legislative history noted above. We therefore will sustain the Medical Center's objection as to plaintiffs' screening claim under EMTALA.

The Medical Center next objects to plaintiffs' stabilization and transfer claim, contending that plaintiffs' allegations are based upon a traditional medical negligence claim for failing to diagnose and treat which is not actionable under EMTALA. In pertinent part, section 1395dd(b) states:

"If any individual (whether or not eligible for benefits under this subchapter) comes to a hospital and the hospital *determines* that the individual has an emergency medical condition, the hospital must provide either—

"(A) . . . for such further medical examination and such treatment as may be required to stabilize the medical condition, or

"(B) for transfer of the individual to another medical facility in accordance with subsection (c) of this section." 42 U.S.C. §1395dd(b). (emphasis added)

For the requirements of section 1395dd(b) to apply, the plain language of the statute mandates that the hospital has determined that an emergency medical condition exists, thereby having actual knowledge of same. *Baber v. Hospital Corp. of America,* 977 F.2d 872, 883 (4th Cir. 1992); see also, *Vickers v. Nash General Hospital Inc.,* 78 F.3d 139, 146 (4th Cir. 1996); *Urban v. King,* 43 F.3d 523 (10th Cir. 1994); *Holcomb v. Monahan,* 30 F.3d 116, 117 (11th Cir. 1994); *Green,* 918 F. Supp. at 335. Consequently, if such condition is not detected, "the hospital cannot be charged with failure to stabilize a known emergency condition." See *Green,* 918 F. Supp at 335. "EMTALA otherwise would become coextensive with malpractice for negligent treatment [ ]" which Congress did not intend. *Vickers,* 78 F.3d

at 142, 145. Moreover, since section 1395(c) is dependent upon section 1395(b), the transfer requirements likewise do not operate unless the hospital actually diagnoses the patient with an emergency medical condition. *Green,* 918 F. Supp. at 335.

Thus, critical to plaintiffs' stabilization and transfer claim in the instant case is an averment that the Medical Center had detected and thus had knowledge of plaintiff-husband's abdominal staph infection. While it is apparent from the pleadings that the Medical Center had knowledge of plaintiff-husband's initial abdominal condition, which warranted surgery, there are no allegations which suggest that the Medical Center knew of the specific condition upon which plaintiffs base their claim, *i.e.,* plaintiff-husband's abdominal infection. Without such an allegation, plaintiffs' claim cannot succeed. Therefore, based upon the foregoing, we will sustain the Medical Center's objection to plaintiffs' stabilization and transfer claim. However, plaintiffs will be granted leave to amend their complaint with respect to their stabilization and transfer claim in accordance with this opinion if they are able to do so.

The Medical Center further objects to paragraph 97(e), arguing, that it is insufficiently specific. We will overrule this objection. Paragraph 97(e) states that the Medical Center was negligent in that they failed "to perform necessary diagnostic tests promptly." Reading this paragraph in conjunction with the entire complaint places the Medical Center on notice as to what they must defend against.

## ORDER

The Medical Center's objection to plaintiffs' claim that the Medical Center violated section 1395dd(a) of EMTALA for failure to screen is sustained. Conse-

quently, that claim, set forth in Counts 11 and 12, paragraphs 112 and 123, is dismissed. The Medical Center's objection to plaintiffs' stabilization and transfer claim pursuant to sections 1395dd(b) and (c) of EMTALA is likewise sustained. However, plaintiffs are granted leave to amend this claim as set forth in their complaint within 20 days from the date of this order in accordance with the attached opinion. With respect to paragraph 97(e), the Medical Center's objection is overruled.