**Stephen M. LAIR, et al., Appellants,**
v.
**AMERICAN FAMILY MUTUAL INSURANCE COMPANY,**
Respondent.
No. 72134.
Supreme Court of Missouri,
En Banc.
May 15, 1990.

---

Zel M. Fischer, James D. Boggs, Kansas City, for appellants.

Martin M. Montemore, Janet I. Blauvelt, Kansas City, for respondent.

RENDLEN, Judge.

Stephen Lair, age seventeen, was injured in a one-car accident March 21, 1986. Both the automobile in which he was riding and its driver, Richard Little, were uninsured. Reaching his eighteen birthday, Stephen commenced this action against Little[1] and the American Family Mutual Insurance Company (American) under the uninsured motorist provision of three American policies carried on various Lair family automobiles. His parents, Calvin and Tinne Lair, joined suit to pursue their derivative claim of $17,997.88 for medical expenses provided their son as a result of the accident. Stephen's claim for $125,000 included present and future pain and suffering, as well as future medical expenses.

The American Family policies pertaining to this appeal are as follows:

| VEHICLE & POLICY # EFFECTIVE DATE OF POLICY | NAMED INSURED | PER PERSON *UM LIMITS | PER ACCIDENT *UM LIMITS |
|---|---|---|---|
| 01 1979 Camaro 11–28–78 | Calvin Lair (and spouse per policy definition) | $50,000.00 | $100,000.00 |
| 11 1982 GMC pkup 1–31–83 | Calvin Lair (and spouse per policy definition) | $50,000.00 | $100,000.00 |
| 21 1974 Plymouth Scamp 8–26–85 Renewed 2–26–86 | Stephen M. Lair | $25,000.00 | $50,000.00 |

*UM – Uninsured Motorist

A premium was charged for each coverage in the foregoing policies including a separate premium for uninsured motorist coverage.

About seven months prior to the collision, Stephen applied to American Family for insurance in his own name to cover his recently acquired 1974 Plymouth Scamp.

The policy, # 21, was issued with Stephen as the named insured, though the Plymouth was titled in the joint names of Stephen and his father, Calvin Lair. Prior to this time, when Stephen was sixteen and had obtained his driver's license, his parents arranged that he be included as a

---

1. The suit against Little was subsequently dismissed without prejudice.

"youthful driver" under two automobile policies, # 1 and # 11, insuring their cars. Accordingly, American increased the premiums for the general liability, medical pay, comprehensive and collision coverage of those policies. Before this time, a part of the premium payments on each policy was devoted to uninsured motorist coverage. However, when the premiums were increased at the time Stephen was added as a "youthful driver," no additional amount was charged for the uninsured motorist coverage. This apparently stems from the fact that he, as a relative living in the household of the insured, was automatically covered, and his addition as a "youthful driver" (who owned no car) did not extend the risk.[2]

Each policy contained identical language limiting the uninsured motorists coverage to the named insured and certain relatives. The term "relative" was defined:

> Relative means a person living in your household, related to you by blood, marriage or adoption. This includes a ward or foster child. It excludes any person who, or whose spouse, owns a car.

Though we are not told the circumstances concerning the purchase of the Plymouth, the parties stipulated that:

> On March 21, 1986, Stephen M. Lair *owned* a 1974 Plymouth Scamp jointly with his father, Calvin Lair. (Emphasis added.)

The cause, submitted on cross Motions for Summary Judgment, was ripe for such consideration as no dispute to any essential fact remained. The court found Stephen Lair was entitled to recover $25,000, the per person limit of his policy's uninsured motorist coverage. The court further found that because Stephen was the owner of a car at the time of the accident, he was excluded from coverage under his parents' uninsured motorists coverage. As to the parents' derivative claim for medical expenses paid, the court determined the $25,000 per person limit of Stephen's policy had been exhausted by Stephen's claim and because the $50,000 per accident limit did not appertain, their claim was denied.

## STACKING UNINSURED MOTORISTS COVERAGES

■ As noted above, the court found, as a matter of law, the provisions of the uninsured motorist coverage in all three policies excluded from coverage any relative who "owns a car," and that Stephen was such an owner. We have this date decided *Lightner v. Farmers Insurance Company, Inc.,* 789 S.W.2d 487 (Mo. banc 1990), involving an issue similar to that presented here. *Lightner* required interpretation of the term "owned" in connection with uninsured motorist coverage and because of particular circumstances in that case, we held the minor, Tim Lightner, though he had permission to drive and his name had been added to the title, was not the owner of the car in question. Had it been otherwise, he would have been excluded from stacking his claims for uninsured motorists coverage with his parents' policies. Abundant evidence supported the conclusion that Tim Lightner did not own the car; here, however, the facts are quite different. The car was purchased approximately seven months before the accident and we are not told the circumstances regarding the purchase, only that the car was titled in the son and father's names. Unlike *Lightner,* there is no testimony except that the car belonged to Stephen. He had purchased automobile insurance in his name and coincidentally his parents removed him as a "youthful driver" from the insurance coverage on their cars. Any possible inference that Stephen did not own the Plymouth was dispelled by the stipulation's unequivocal recitation that Stephen "owned" the car "jointly with his father." There is substantial evidence supporting the court's

---

**2.** Stephen, in support of stacking his parents' policies, raises an issue regarding the premiums paid by his parents to American on their automobile insurance policies. He argues that inasmuch as American bases its premium for uninsured motorist insurance upon the limit of coverage and geographical location of the insured, he should be covered under his parents' policies because whether he owns a car is irrelevant to the premium paid. This argument is based upon dictum found in *Famuliner v. Farmers Insurance Co., Inc.,* 619 S.W.2d 894 (Mo.App. 1981). Although a novel argument, we need not address the issue because by the language of the policy and the stipulation, Stephen fell outside the coverage.

determination prohibiting stacking and we see nothing requiring us to declare such exclusion invalid or expressly contrary to any Missouri statute or public policy. *See Famuliner v. Farmers Insurance Company, Inc.*, 619 S.W.2d 894 (Mo.App.1981).

## PUBLIC POLICY CONSIDERATIONS

■ The Lairs argue that because § 379.203.1, RSMo 1978, required that any automobile liability insurance policy must contain uninsured motorist coverage in limits of not less than $25,000 per person and $50,000 per accident[3] for injury or death, establishes a public policy which prohibits anti-stacking and limiting clauses pertaining to uninsured motorist coverage. *See Bergtholdt v. Farmers Insurance Company, Inc.*, 691 S.W.2d 357, 360 (Mo.App. 1985). Similar arguments were analyzed in *Famuliner v. Farmers Insurance Company, Inc.*, 619 S.W.2d 894 (Mo.App.1981), where plaintiff was disqualified from coverage under his parents' uninsured motorist policy, even though he resided in their household because he owned a car and a motorcycle. Responding to the public policy argument, the court stated:

the issue ... posed is whether § 397.203 requires, as a matter of public policy that resident family members be provided uninsured motorist coverage on vehicles other than those primarily insured irrespective of whether such family members owned their own cars with or without their own insurance protection. We conclude the statute imposes no such requirement.

The concept of mandatory uninsured motorist coverage comprehends that those who purchase automobile liability insurance should be afforded minimum protection as required by the financial responsibility law regardless of whether the offending vehicle is driven by an insured or an uninsured operator.

*Id.* at 896–897. The court further observed:

Section 379.203 contains no requirement that automobile insurance policies provide uninsured motorist protection to any particular class or group of persons, whether they be residents of the same household or family members. The statute does require, however, that all policies of liability insurance must also include uninsured motorist coverage to "persons insured thereunder."

*Id.* at 897. While it can be persuasively argued that this is the type of limiting clause which improperly prohibits stacking of uninsured motorist coverage and is thus contrary to public policy manifest in the statute, we cannot say from the statutes' reach the legislature intended that limiting provisions of the sort under scrutiny in the case at bar are violative of "public policy."

■ Stephen next contends stacking should be allowed because of the expectation of the parties, relying upon *Husch v. Nationwide Mutual Fire Insurance Company*, 772 S.W.2d 692 (Mo.App.1989), where it was held:

When purchasing uninsured motorist coverage, policyholders are primarily concerned with protecting themselves, their spouses, and their minor children, i.e., the natural family unit. Minor children are unable to insure themselves and thus provide financial protection against disabling injuries. Parents have support obligations for their children during minority, and this obligation continues in some instances for disabled children. For these reasons, we believe a policy holder would reasonably expect his minor children to be entitled to the same uninsured motorist coverage which he is.

*Id.* at 694–5.

From this the Lairs contend that because they were obligated to pay Stephen's medical expenses, it is reasonable that they expect Stephen to have the same coverage they enjoy. There are problems with this analysis. First, unlike the minor child unable to "provide financial protection against disabling injuries," Stephen maintained an insurance policy whose coverage met the statutory requirements. Second, the Lairs scattered such expectations when they voluntarily removed Stephen's name

---

**3.** The limits required by § 379.203.1 are in reliance upon § 303.020(10), which was amended in 1981, raising the limits to the present $25,-000/$50,000 amounts.

as "youthful driver" from their liability policies and received a premium rebate for such removal. It is difficult to envision an expectation that he would continue to be protected by their uninsured motorist provisions when he acquired his own automobile and insurance, and they removed him from their liability coverage.

## PER PERSON/PER ACCIDENT

■ The next claim is that of Calvin and Tinne Lair, who seek recovery of the $17,997.88 paid for Stephen's medical expenses. The trial court in construing the per person vis-a-vis per accident coverage limitations in the uninsured motorist section of Stephen's policy found the latter was not available to the plaintiffs and that Stephen Lair's claim exhausted the $25,000 per person limit. The applicable policy section reads:

### Limits of Liability

The limits of liability shown in the declaration apply, subject to the following:

1. The limit for "each person" is the maximum for bodily injury sustained by any person in any one accident.
2. Subject to limit for "each person" the limit for "each accident" is the maximum for bodily injury sustained by two or more persons in any one accident.

As previously stated, the coverage limits were $25,000 "per person" and $50,000 "per accident" and American paid the "per person" limit to Stephen, the only person injured in the accident.

The Lairs contend the language of the "Limits of Liability" is ambiguous and should be favorably construed for the insured's benefit, citing *Cano v. Travelers Insurance Co.*, 656 S.W.2d 266 (Mo. banc 1983). Reliance upon *Cano* is misplaced. There, the Court held the language, "[t]he limit of liability stated in the declarations is applicable to 'each person' is the limit of The Travelers' liability for all damages because of bodily injury sustained by one person as a result of any one accident ..." was ambiguous. *Id.* at 271. The ambiguity resulted because the grammatical ar-

rangement of the sentence allowed the participle "sustained" to modify either the phrase "all damages" (thus applying to bodily and non-bodily injuries) or the phrase "bodily injuries" (in which case non-bodily injuries would be excluded). The case *sub judice* presents no such problems of syntax. The words, "[t]he limit for 'each person' is the maximum for bodily injury sustained by a person in any one accident" are unambiguous, as the participle "sustained" can only modify "bodily injury," hence the policy's language belies the claim of ambiguity. *See Madison Block Pharmacy, Inc. v. United States Fidelity and Guaranty Co.*, 620 S.W.2d 343, 346-7 (Mo. banc 1981).

The judgment is affirmed.

BLACKMAR, C.J., ROBERTSON, HIGGINS, COVINGTON and BILLINGS, JJ., and CONNETT, Senior Judge, concur.

HOLSTEIN, J., not sitting.