**Richard STEELE, Plaintiff,**

v.

**Scott ELLIS d/b/a Pony Express Motors and John Foy, Defendants.**

Civil Action No. 96–2209–GTV.

United States District Court, D. Kansas.

April 1, 1997.

Jeffrey P. Johnson, Kansas City, MO, for Plaintiff.

Paul P. Hasty, Jr., Wallace, Saunders, Austin, Brown & Enochs, Chartered, Overland Park, KS, Kirk D. Auston, Prairie Village, KS, for Scott Ellis, d/b/a Pony Express Motors.

Kirk D. Auston, Prairie Village, KS, for John Foy.

### MEMORANDUM AND ORDER

VAN BEBBER, Chief Judge.

Plaintiff brings this action asserting claims of fraudulent misrepresentation, negligent misrepresentation, and breach of implied warranty.[1] Plaintiff predicates his claims on the Kansas Consumer Protection Act, K.S.A. § 50–623 *et seq.*, the Uniform Commercial Code, K.S.A. § 84–1–101 *et seq.*, the Magnuson–Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, and Missouri common law. The case comes before the court on defendant Scott Ellis' motion for summary judgment (Doc. 22). For the reasons set forth below, the motion is granted.

### I. Factual Background [2]

The following facts are either uncontroverted or are based on evidence viewed in

---

**1.** In his original complaint, plaintiff also asserted claims for breach of express warranty and for violations of the Missouri Merchandising Practices Act, Mo.Rev.Stat. § 407.020 *et seq.* Plaintiff expressly abandoned those claims in his response to defendant's motion. Accordingly, the court grants summary Judgment to defendant on those claims.

**2.** Both parties have failed to comply with D. Kan. R. 56.1 by alleging facts in the introduction and body of their memoranda that are not included in numbered paragraphs. "All facts on which either party relies must be organized by and contained within numbered paragraphs, and all operative facts must be captured within the parties' statement of uncontroverted facts and response thereto." *Green v. Reddy*, 918 F.Supp. 329, 333 (D.Kan.1996). Nevertheless, because

the most favorable light to the nonmoving party. Immaterial facts and facts not properly supported by the record are omitted.

In July 1992, Quality Auto Brokers, a Missouri car dealership, purchased a 1991 Lincoln Continental automobile that had been involved in a collision in Texas, and obtained a salvage title for the vehicle. Shortly thereafter, defendant John Foy, who works in the car repair business, examined the vehicle and determined that he could rebuild and later resell it for a profit. Foy then paid Quality Auto Brokers $10,000 for the automobile and began rebuilding it. After Foy completed his work, Quality Auto Brokers obtained a "clean" Missouri title, i.e., an original title not showing any prior salvage notations.[3]

Foy subsequently contacted defendant Scott Ellis, for whom he occasionally had performed car body work, and requested permission to title the vehicle in the name of Ellis' company, Pony Express Motors. Because Foy was not a licensed dealer, titling the car with Pony Express allowed Foy to avoid title and insurance expenses. Ellis maintains that he agreed to the transaction merely as a favor to Foy; plaintiff contends that Foy thought the transaction also benefitted Ellis in some way but offers no indication of how Ellis may have benefitted.

After title had been transferred to Pony Express, Foy advertised the vehicle in *The Kansas City Star*. Ellis had no participation or involvement in the advertisement and the advertisement made no reference to Ellis or Pony Express. The phone number in the advertisement was that of Foy's Olathe, Kansas residence.

Plaintiff, upon reading the advertisement, contacted Foy and made an appointment to view the car at Foy's residence. When the two individuals met, Foy stated that although he had performed some repair work on the rocker arm and back door, the vehicle remained in excellent condition. Foy did not disclose to plaintiff that the car previously had been totaled in a wreck and titled as a salvage vehicle. Plaintiff then negotiated with and agreed to purchase the Continental from Foy.

When plaintiff arranged financing through his bank, he learned for the first time that the vehicle was titled in the name of Pony Express. Until that moment, plaintiff believed he was buying the car directly from Foy. Plaintiff concedes that even after learning of Pony Express' role in the transaction, he did not, in any way, base his decision to purchase the Continental on the fact that title rested with Pony Express.

Plaintiff neither met nor spoke with Ellis prior to purchasing the vehicle; all of plaintiff's dealings were with Foy. Ellis, in fact, never saw the car before it was sold to plaintiff. Ellis' sole involvement in the sale of the car consisted of two transactions: (1) guaranteeing plaintiff's bank, upon the bank's request, that its lien on the Continental would be perfected; and (2) authorizing Foy, after he had negotiated the sale with plaintiff, to convert Pony Express' Missouri title into a Kansas title. Ellis received no remuneration from the purchase of the Continental; after plaintiff's bank tendered a check to Pony Express, Ellis immediately wrote a check to Foy for the full amount of the purchase.

In November 1994, plaintiff attempted to trade-in the automobile at a Missouri dealership. After running a CarFax (a computerized car-history database search), the dealer discovered and informed plaintiff that the vehicle had previously been issued a salvage title. Plaintiff then conducted additional investigation into the car's history and ultimately commenced this action against Foy and Ellis.

*II. Summary Judgment Standards*

In deciding a motion for summary judgment, the court must examine any evidence tending to show triable issues in the light most favorable to the nonmoving party. *Bee*

---

the parties' factual allegations either contain citations to the record or have evidentiary support in the documents accompanying the pleadings, the court will consider all of the allegations. The court, however, admonishes the parties to adhere strictly to the local rules in the future.

**3.** The record is unclear whether, at the time Foy paid the money to Quality Auto Brokers, he had completed his repairs and Quality Auto Brokers had obtained a clean title.

*v. Greaves,* 744 F.2d 1387, 1396 (10th Cir. 1984). A moving party is entitled to summary judgment only if the evidence indicates "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine factual issue is one that "can reasonably be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be discharged by "showing" that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.*

### III. Discussion

Plaintiff has asserted misrepresentation tort claims as well as breach of implied warranty contract claims. The court will address each in turn.

### A. Tort Claims

■ The court's first task is to determine what state's substantive law governs plaintiff's tort claims. A federal court sitting in diversity must apply the choice-of-law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941). Kansas adheres to the *lex loci delicti* approach, meaning that the law of "place of the wrong" controls. *Ling v. Jan's Liquors,* 237 Kan. 629, 703 P.2d 731, 735 (1985). The "place of the wrong" is the location in which the last event necessary to impose liability occurred. *Id.* (rejecting the "most significant

relationship" analysis of the Restatement (Second) of Conflicts § 145 (1969)). In a misrepresentation or fraudulent omission claim, the "last event" is the injury; the "place of the wrong," therefore, is where the loss is sustained, not where the fraud or misrepresentations were made. *Atchison Casting Corp. v. Dofasco, Inc.,* 889 F.Supp. 1445, 1456 (D.Kan.1995)(citing *Raymark Indus., Inc. v. Stemple,* 714 F.Supp. 460, 464 (D.Kan.1988)). Under this analysis, the law of the state in which plaintiff felt the "effects" of the fraud controls. *Maberry v. Said,* 911 F.Supp. 1393, 1399 (D.Kan.1995).

■ Plaintiff resides in Missouri. The injuries he allegedly suffered from defendants' misrepresentations would have been felt in that state. *See id.* at 1399–1400. Accordingly, the court finds that Missouri law governs plaintiff's tort claims.

#### 1. Fraudulent Misrepresentation

■ To prevail on a claim of fraudulent misrepresentation under Missouri law, plaintiff must establish: (1) a false, material representation; (2) the speaker's knowledge of its falsity or his ignorance of the truth; (3) the speaker's intent that it should be acted upon by the hearer in the manner reasonably contemplated; (4) the hearer's ignorance of the falsity of the statement; (5) the hearer's reliance on its truth, and the right to rely thereon; and (6) proximate injury. *Gast v. Ebert,* 739 S.W.2d 545, 547 (Mo.1987)(en banc).

■ Plaintiff concedes that he had no contacts with Ellis prior to purchasing the Continental. His sole theory for subjecting Ellis to liability, therefore, rests on his allegation that an agency relationship existed between Ellis and Foy such that Foy's conduct is imputed to Ellis. A relationship of principal and agent cannot be presumed but must be proved by the party asserting the existence of such relationship. *Martin Coin Co. v. King,* 665 S.W.2d 939, 942 (Mo. 1984)(en banc)(citing *Dudley v. Dumont,* 526 S.W.2d 839, 843–44 (Mo.Ct.App.1975)).

■ The crux of plaintiff's agency argument is that "[w]hen the vehicle was placed

in the name of Mr. Ellis' dealership, Mr. Ellis then owned it and had the right to control Mr. Foy's every action concerning any aspect of the handling of the vehicle." (Pl.'s Resp. at 10). Construing the evidence in a light most favorable to plaintiff, the court finds that no agency relationship has been established. First, under Missouri law, a certificate of title is not conclusive proof of ownership; it is only *prima facie* evidence of ownership that may be rebutted. *Lightner v. Farmers Ins. Co.*, 789 S.W.2d 487, 490 (Mo.1990) (en banc); *Landshire Food Serv., Inc. v. Coghill,* 709 S.W.2d 509, 512 (Mo.Ct. App.1986). There is ample evidence in the record indicating that Foy purchased the vehicle with his own money and for his own personal benefit, conducted all dealings with plaintiff, and received all proceeds from the sale of the car. Under these circumstances, the mere fact that Foy titled the car in the name of Pony Express does not extinguish his ownership interests.

Second, even if Foy was Ellis' agent for certain transactions, the scope of that agency was not broad enough to impute Foy's fraudulent statements and omissions concerning the vehicle's salvage history to Ellis. A brief review of agency principles under Missouri law will bear out the court's conclusion.

### a. Actual/Express Agency

██ Actual (often referred to as express) agency requires an express grant of authority by a principal to his agent. *Shelby v. Slepekis,* 687 S.W.2d 231, 234–35 (Mo.Ct.App. 1985). The only evidence of a specific agreement between Foy and Ellis authorizing one to act for and under the control of the other involved Ellis' empowering Foy to exchange Pony Express' Missouri title for a Kansas title. This limited agreement does not establish, as plaintiff contends, that Ellis had the right to control all of Foy's actions regarding the vehicle nor does it indicate that Foy was Ellis' agent in any matter other than the Missouri to Kansas title conversion. In fact, Ellis' insistence on having Foy arrange the title transfer is consistent with his contention that he played virtually no role in the sale of the Continental other than to permit Foy to title the vehicle in the name of Pony Express.

Plaintiff's attempt to broaden the agency relationship is unsupported. *See Wieland v. Ticor Title Ins. Co.*, 755 S.W.2d 659, 664 (Mo.Ct.App.1988)(holding that an agent has no authority to bind a principal beyond the limits of the authority conferred upon him).

### b. Implied Agency

██ Implied agency is authority given implicitly by a principal to his agent. The agency may be proved circumstantially, evidenced by conduct, or inferred from a course of dealing between the alleged principal and the agent. *M.D. & Assocs., Inc. v. Sears, Roebuck & Co.*, 749 S.W.2d 454, 456 (Mo.Ct. App.1988) (citing *Dumont,* 526 S.W.2d at 844). "Implied authority depends on the actual relationship between the principal and the agent and not what a third party may have been told or may believe as to the relationship. Agency will not be inferred because a third party assumed it existed." *Slepekis,* 687 S.W.2d at 235.

There is nothing in the record to suggest that, in conducting negotiations with plaintiff, Foy acted in a representative capacity with the knowledge or acquiescence of Ellis. Nor is there any evidence that plaintiff relied on an authoritative relationship between Foy and Ellis in purchasing the Continental. Plaintiff, therefore, has failed to prove implied agency.

### c. Apparent Agency

██ An apparent agency may be created if the conduct of the principal is such that an appearance of agency is created. Apparent authority is distinguishable from actual and implied authority in that the principal communicates directly with a third person to create apparent authority; to create actual or implied authority, the principal communicates directly with the agent. *Hamilton Hauling, Inc. v. GAF Corp.*, 719 S.W.2d 841, 846 (Mo.Ct.App.1986); *Dumont,* 526 S.W.2d at 845. To establish the apparent authority of a purported agent, a plaintiff must show that:

(1) the principal manifested his consent to the exercise of such authority or knowingly permitted the agent to assume the exercise of such authority;

(2) the person relying on this exercise of authority knew of the facts and, acting in good faith, had reason to believe, and actually believed, the agent possessed such authority; and

(3) the person relying on the appearance of authority changed his position and will be injured or suffer loss if the transaction executed by the agent does not bind the principal.

*Link v. Kroenke,* 909 S.W.2d 740, 745 (Mo.Ct. App.1995). Under these requirements, an agent has apparent authority to act, even in the absence of actual authority, if the principal holds the agent out as possessing certain authority. *Hamilton Hauling,* 719 S.W.2d at 846. Plaintiff, however, has not demonstrated that Foy's allegedly fraudulent conduct may be imputed to Ellis under an apparent agency theory.

With the exception of a single transaction at the Kansas Department of Motor Vehicles, Ellis never "held out" Foy as possessing any authority to act on Ellis' behalf. Moreover, even if plaintiff was aware of the motor vehicle department transaction, and nothing in the record suggests he was, Ellis would be bound only by the acts within the scope of Foy's apparent authority.[4]  *Mobley v. Webster Elec. Coop.,* 859 S.W.2d 923, 931 (Mo.Ct. App.1993); *Hamilton Hauling,* 719 S.W.2d at 846. While Ellis, therefore, may be estopped from arguing that Foy had no power to obtain a Kansas title in the name of Pony Express, he is not responsible for Foy's acts and omissions in negotiating the sale with plaintiff.

Additionally, there is nothing in the record indicating that plaintiff relied on an appearance of authority in making his decision to purchase the Continental. At no time did Foy affirmatively represent to plaintiff, or even give an impression, that he was acting on behalf of either Ellis or Pony Express. Plaintiff concedes, in fact, that it was only after he agreed to purchase the automobile and had arranged for financing that he

learned title rested with Pony Express. Plaintiff further acknowledges that the fact Pony Express had legal title to the vehicle was of little import to him at the time.

In sum, plaintiff has proffered no evidence that Ellis actually exercised, or appeared to exercise, control over the details of Foy's negotiations and ultimate sale of the Continental. Nor has plaintiff shown that he relied on a relationship between Foy and Ellis in making his decision to purchase the vehicle. Accordingly, the court finds that no agency relationship has been established. Summary judgment, therefore, must be granted to Ellis on plaintiff's fraudulent misrepresentation claim.

### 2. Negligent Misrepresentation

Similar to his fraud claim, plaintiff's negligent misrepresentation claim alleges that Ellis negligently failed to inspect the vehicle, discover potential defects, disclose those defects, and perform any necessary repairs.

In order to prove a negligent misrepresentation claim under Missouri law, a plaintiff must establish that (1) the speaker supplied information in the course of his business or because of some pecuniary interest; (2) due to the speaker's failure to exercise reasonable care or competence in obtaining or communicating this information, the information was false; (3) the speaker intentionally provided the information for the guidance of a limited group of persons in a particular business transaction; (4) the listener justifiably relied on the information; and (5) as a result of the listener's reliance on the statement, he suffered a pecuniary loss. *Hartford Accident & Indem. Co. v. Contico Int'l, Inc.,* 901 S.W.2d 210, 212 (Mo. Ct.App.1995). The elements of negligent misrepresentation differ from those of fraudulent misrepresentation in one major respect: while the latter requires proof that the defendant either knew the statement was false or was reckless in ascertaining its truth or falsity, the former requires only that the

---

4. Missouri courts have held that car salesmen are agents of the dealership. *See, e.g., Brown v. New Plaza Pontiac Co.,* 719 S.W.2d 468, 473 (Mo.Ct.App.1986); *Smith v. New Plaza Pontiac Co.,* 677 S.W.2d 941, 943 (Mo.Ct.App.1984). In

those cases, however, the salesman and dealer had an employment relationship and the salesman's conduct directly benefitted the dealer. No such relationship exists in the instant action.

defendant failed to exercise reasonable care in obtaining or communicating true information. *Jim Lynch Cadillac, Inc. v. Nissan Motor Acceptance Corp.,* 896 S.W.2d 704, 707 (Mo.Ct.App.1995).

■■■■ Plaintiff alleges that Ellis was aware the Continental that Foy purchased from Quality Auto Brokers had been salvaged yet failed to communicate that information to plaintiff. Material omissions may constitute misrepresentation. *B.L. Jet Sales, Inc. v. Alton Packaging Corp.,* 724 S.W.2d 669, 672 (Mo.Ct.App.1987). No liability, however, has been established. Indeed, although privity is not an element of the tort of negligent misrepresentation, *id.,* defendant is not liable for his statements or omissions unless he owed a duty of disclosure to the plaintiff. *Frame v. Boatmen's Bank,* 824 S.W.2d 491, 494 (Mo.Ct.App.1992). Ellis had no such duty in the case at bar.

Ellis had no pecuniary interest in the sale of the car to plaintiff; all proceeds inured to the benefit of Foy. Although plaintiff asserts that Ellis may have benefitted in some other way from titling the vehicle in the name of Pony Express, plaintiff neither offers evidence nor articulates a theory upon which Ellis may be said to derive a benefit from the sale of the Continental. In addition, no fiduciary relationship existed between plaintiff and Ellis. Plaintiff negotiated his purchase exclusively with Foy and, for the reasons set forth above, Foy's conduct is not imputed to Ellis. The court, therefore, concludes that summary judgment must be granted to Ellis on plaintiff's negligent misrepresentation claim.

*B. Breach of Implied Warranty Claims*

Plaintiff further alleges that Ellis breached an implied warranty of merchantability by not disclosing the full extent of repairs that the Continental had undergone prior to plaintiff's purchase. Plaintiff maintains that such an omission would not pass "without objection in the trade under the contract description," and, therefore, Ellis is in violation of the implied warranty provisions of the Uniform Commercial Code.

The parties dispute whether Kansas or Missouri law applies to plaintiff's warranty claims. The issue is irrelevant, however, inasmuch as the claims revolve around alleged violations of the UCC. Both Missouri and Kansas have adopted the UCC and the court finds no differences in those states' interpretations of any relevant provisions. *Compare* K.S.A. § 84–2–314 *with* Mo.Rev.Stat. § 400.2–314.

The UCC provides that a "warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." K.S.A. § 84–2–314(1). To be considered "merchantable," goods "must be at least such as pass without objection in the trade under the contract description." *Id.* § 84–2–314(2)(a).

■■■■ The implied warranty claims against Ellis must fail. As the court discussed in its analysis of plaintiff's tort claims, Ellis was not the "seller" of the vehicle. The term "seller" under the UCC refers to the individual who sells or contracts to sell the controverted goods. *Id.* § 84–2–103(1)(d). Although he permitted Foy to title the vehicle in the name of his company, Ellis played no role in the negotiations with plaintiff and received no remuneration from the sale of the car. Moreover, Kansas, like Missouri, adheres to the principle that the owner of a vehicle is not limited strictly to the person holding a certificate of title. *Snodgrass v. State Farm Mut. Auto. Ins. Co.,* 15 Kan. App.2d 153, 804 P.2d 1012, 1019 (1991). Thus, the mere fact that Ellis permitted Foy to title the car with Pony Express while Foy solicited buyers does not convert Ellis into a "seller" and subject him to the dictates of the UCC.

As the court also noted above, Foy's conduct cannot be imputed to Ellis under any agency theory.[5] Ellis did not hold Foy out to

---

5. The lack of an agency relationship between Foy and Ellis may be found under both Missouri and Kansas law. The Kansas Supreme Court has set out principles of agency that are identical to the Missouri cases discussed in Part A. *See Mohr v. State Bank of Stanley,* 241 Kan. 42, 734 P.2d 1071, 1075–76 (1987); *Theis v. duPont, Glore*

plaintiff as possessing authority to act in Pony Express' behalf nor did Foy give any indication to plaintiff that he represented Ellis or Pony Express. Accordingly, summary judgment is granted to Ellis on plaintiff's UCC claims.

Plaintiff's claims under the Kansas Consumer Protection Act and the Magnuson-Moss Warranty Act are predicated on a breach of an implied warranty of merchantability. Because the court has concluded that Ellis committed no such breach, the claims against him under those statutes must fail as well.

IT IS, THEREFORE, BY THE COURT ORDERED that defendant Scott Ellis' motion for summary judgment (Doc. 22) is granted.

Copies of this order shall be mailed to counsel of record for the parties.

**IT IS SO ORDERED.**

### MEMORANDUM AND ORDER

This matter comes before the court on plaintiff's motion for reconsideration (Doc. 37) of the court's order granting summary judgment to defendant Scott Ellis. For the reasons set forth below, the motion is denied.

#### I. Procedural Matters

Before reaching the merits of plaintiff's motion, the court must address several procedural matters. First, in the District of Kansas, the relevant date for determining time limitations on post-judgment motions is the file stamp date appearing on either the court's order or, if relevant, the entry of judgment form. Thus, contrary to the assertion of both parties, the court officially entered its summary judgment order on April 1, 1997. The fact that the clerk's office did not docket the order until the following day is irrelevant; the docketing reflects nothing more than the clerk's office's internal record keeping.

Second, the Federal Rules of Civil Procedure do not recognize a motion for reconsideration. *Hatfield v. Board of County Comm'rs,* 52 F.3d 858, 861 (10th Cir.1995) (citation omitted). The court, therefore, construes such a motion in one of two ways. If the motion is filed within ten days of the court's entry of judgment, it is considered a motion to alter or amend judgment pursuant to Fed.R.Civ.P. 59(e). *Hawkins v. Evans,* 64 F.3d 543, 546 (10th Cir.1995) (citation omitted). If the motion is filed more than ten days after the court's entry of judgment, it is treated as a request for relief from judgment under Fed.R.Civ.P. 60(b). *Id.* The distinction between the two rules is significant. The rules not only have dissimilar standards, they also have unique effects on the availability and scope of appellate review.

Plaintiff filed his motion on April 17, 1997, two days after the ten-day time limit imposed by Rule 59(e) had expired. Recognizing that the standard necessary to obtain relief under Rule 59(e) is less demanding than under Rule 60(b), plaintiff requests that the court allow him to file his Rule 59(e) motion out of time. The court, however, has no jurisdiction to extend the time period prescribed by this rule. *See* Fed.R.Civ.P. 6(b); *Browder v. Director, Department of Corrections of Illinois,* 434 U.S. 257, 262 n. 5, 98 S.Ct. 556, 559 n. 5, 54 L.Ed.2d 521 (1978).

Plaintiff alternatively requests that the court grant him an extension pursuant to D. Kan. R. 7.3.[1] The court rejects this request. Although many parties cite to the rule erroneously, Rule 7.3, which has standards identical to those of Fed.R.Civ.P. 59(e), was enacted to handle exclusively non-dispositive judgments and orders. Indeed, if the court permitted parties to utilize the discretionary time extensions authorized under D. Kan. R. 7.3 in seeking reconsideration of a dispositive judgment or order, the court would be in direct violation of Fed.R.Civ.P. 6(b) and would be acting entirely outside its jurisdiction. Plaintiff's motion, therefore,

*Forgan Inc.,* 212 Kan. 301, 510 P.2d 1212, 1215–16 (1973).

1. Plaintiff requests this extension in a separate motion (Doc. 40), filed eleven days after the

submission of his original motion for reconsideration. For the reasons discussed in Part I, the motion is denied.

must be treated as a motion for relief from judgment under Fed.R.Civ.P. 60(b).

■ Finally, plaintiff prefaces his motion by observing that he believes the court granted summary judgment "due to [his] failure to present his opposing arguments with the force and articulation that they deserved." (Pl.'s Mot. for Recons. at 1). He thus "seeks to more adequately develop [his] argument" in his motion for reconsideration. *Id.* This approach is an inappropriate litigation device. A party's failure to put forth its strongest case in the first instance does not entitle it to a second chance in the form of a motion to reconsider. *Cross Timbers Oil Co. v. Rosel Energy Inc.*, 168 F.R.D. 649, 650 (D.Kan.1996).

## II. Rule 60(b) Relief

■ Relief under Fed.R.Civ.P. 60(b) is extraordinary in nature and may be granted only in exceptional circumstances. *Cashner v. Freedom Stores, Inc.*, 98 F.3d 572, 576 (10th Cir.1996). Although Rule 60(b) provides six conditions upon which relief may be predicated, only two are at issue here.

### A. Rule 60(b)(1)

■ Rule 60(b)(1) authorizes relief from a final judgment or order on the basis of "mistake, inadvertence, surprise, or excusable neglect." The mistake provision in this rule encompasses situations in which the trial court has made substantive mistakes of law or fact in a final judgment or order. *Cashner*, 98 F.3d at 576. Relief is available, however, only for "obvious" judicial errors that are apparent on the record. *Van Skiver v. United States*, 952 F.2d 1241, 1244 (10th Cir.1991). Errors that are not "facially obvious" do not warrant relief under Rule 60(b)(1). *Id.*

#### 1. Titling Issues

■ Plaintiff first argues that the court erred in finding that John Foy had legal authority to sell the 1991 Continental to plaintiff. The court rejects plaintiff's argu-

ment. Nevertheless, the court recognizes that it erroneously held that Missouri law governs the adequacy of title to the vehicle. Missouri substantive law, which controls the tort claims in this action, mandates that the law of the state where the automobile was delivered upon sale and subsequently titled governs ownership issues. *See Paton v. Buick Motor Div.*, 401 S.W.2d 446, 447 (Mo. 1966) (citing *Mullins v. Sam Scism Motors, Inc.*, 331 S.W.2d 185, 193 (Mo.Ct.App.1960)); *Bruton v. Shelter Mut. Ins., Co.*, 748 S.W.2d 379, 384–85 (Mo.Ct.App.1988). Because nearly every event affecting ownership of the vehicle, including delivery and titling, occurred in Kansas, the court must look to Kansas law to determine ownership interests in the car.[2] Plaintiff's lengthy discussion, therefore, of Missouri's licensing and registration statute, Mo.Rev.Stat. § 301.210, is inapposite.

The court never stated that Scott Ellis and Pony Express Motors had no legal interest in the controverted automobile. Although plaintiff produced no evidence that Ellis agreed to title the car in his company's name for any other reason than to convenience an old friend, the fact of title does create some ownership interests. The court simply found that Foy also had a beneficial interest.

■ Like Missouri, Kansas has a vehicle registration statute, K.S.A. § 8–135, which requires that a certificate of title accompany all automobile sales. Nevertheless, the Kansas Supreme Court has held that joint ownership in a motor vehicle may exist even among individuals who do not appear on the face of the title. *See Crow v. Hershberger*, 170 Kan. 492, 226 P.2d 846, 848 (1951). Kansas courts have distinguished Crow and voided the interests of beneficial owners in cases involving third parties in which resolution of the dispute hinged on who had proper title to the vehicle. *See, e.g., Melton v. Prickett*, 203 Kan. 501, 456 P.2d 34 (1969) (contract rescission); *Maryland Cas. Co. v. American Family Ins. Group*, 199 Kan. 373, 429 P.2d 931 (1967) (insurance coverage); *Stebbins v. Heidebrecht*, 186 Kan. 484, 350 P.2d 783

---

**2.** This revised ruling in no way disturbs the court's prior holding that Missouri law controls

all agency issues in the case.

(1960) ("real party in interest" for procedural purposes). The case at bar, however, involves no such controversy.

Plaintiff's action centers around an attempted imputation of liability based on nothing more than titleholder status. As such, the case is analogous to lawsuits in which the negligence of a driver is sought to be imputed to the individual in whom title rests. Both Missouri and Kansas courts have held uniformly that mere co-ownership of a vehicle is an inadequate basis upon which to impute liability. *See Stover v. Patrick,* 459 S.W.2d 393, 398–401 (Mo.1970) (en banc); *Poetz v. Klamberg,* 781 S.W.2d 253, 256–57 (Mo.Ct.App.1989); *Schmidt v. Martin,* 212 Kan. 373, 510 P.2d 1244, 1246–49 (1973); *Hartley v. Fisher,* 1 Kan.App.2d 362, 566 P.2d 18, 19–20 (1977). Accordingly, the fact that title to the Continental remained in the name of Pony Express does not, without more, suggest that any liability should accrue to Ellis or his dealership.

*2. Agency Issues*

Plaintiff next contends the court erred in holding that no agency relationship existed between Foy and Ellis. The court disagrees. First, the parties' joint ownership in the vehicle undermines any potential principal-agent affiliation. Second, even if the court were to assume that legal title to the automobile rested exclusively with Ellis, there remains, for the same reasons noted in the prior Memorandum and Order, a paucity of evidence in the record indicating an agency relationship sufficient to impute Foy's actions to Ellis.

Plaintiff's arguments are primarily a rehash of the averments he made in response to defendant's summary judgment motion and do not indicate any "mistake" by the court. He does cite one new case, *Buck v. Radcliff Motor Co.,* 233 Mo.App. 750, 125 S.W.2d 888 (1939), for the proposition that the mere sale by Foy of a vehicle titled in the name of Ellis is sufficient to establish an agency relationship. *Buck,* however, is readily distinguishable from the instant action.

In *Buck,* the Radcliff Motor Company sold one of the vehicles on its lot to Hendrickson. Hendrickson immediately tendered a check to the dealership which, in turn, delivered a certificate of title to Hendrickson. The title, however, reflected only that Radcliff was the seller of the vehicle; the line on the title reserved for purchaser remained blank. Hendrickson then sold the vehicle to Buck, misrepresenting the history of the car in the process. After Buck learned of Hendrickson's misrepresentations, he brought suit against Radcliff. The Missouri Court of Appeals held that the jury had determined correctly that "defendant sold its property to plaintiff, using Hendrickson as its chosen agent for the manual delivery of the property, as well as the habiliment of title thereto, and for receiving for it the proceeds of said sale." *Buck,* 125 S.W.2d at 890.

The evidence of agency in *Buck* was significant. Radcliff was an unequivocal beneficiary of the sale to Buck having received the purchase price from Hendrickson in an intermediate transaction. The initial sale to Hendrickson appears to have been little more than a sham transaction engineered to shield Radcliff from liability while allowing it to accrue all benefits from the ultimate assignment to Buck. Nothing approaching that kind of scenario has been established in the case at bar. Plaintiff has advanced no evidence that either Ellis or Pony Express received any benefit from the sale of the vehicle nor has plaintiff shown that the parties intended an agency agreement. To the contrary, all evidence points to the conclusion that Ellis titled the car in his company's name merely as a favor to Foy and played no significant role in the sale. In short, no agency relationship was created.

*3. Implied Warranty and Other Contract Claims*

Plaintiff's final argument is that the court mistakenly ruled Ellis was not the "seller" of the automobile under the UCC and, therefore, had no liability for the alleged breach of implied warranty. Plaintiff again relies exclusively on the fact that Ellis had title to the vehicle. The UCC provides that, unless specifically displaced by a provision of the act, "the principles of law and equity, including the law ... relative to ... principal and agent ... shall supplement its provisions."

.. 

K.S.A. § 84–1–103. For the same reasons discussed above and in its prior Memorandum and Order, the court concludes that Ellis had no duty to disclose the Continental's prior salvage history to plaintiff. Accordingly, the court declines to grant plaintiff relief under Rule 60(b)(1).

### B. Rule 60(b)(6)

Rule 60(b)(6), often described as a "grand reservoir of equitable power to do justice in a particular case," *Cashner,* 98 F.3d at 579 (citation omitted), permits the court to grant relief for "any other reason justifying relief from the operation of the judgment." A trial court may grant a Rule 60(b)(6) motion only if presented with extraordinary circumstances and only when necessary to accomplish justice. *Id.*

Under the facts of this case, the relief warranted under Rule 60(b)(6) is the same as is available under Rule 60(b)(1). The court, therefore, denies plaintiff's motion for relief under Rule 60(b)(6) for the reasons identical to those identified in the court's discussion of Rule 60(b)(1).

IT IS, THEREFORE, BY THE COURT ORDERED that plaintiff's motion for reconsideration (Doc. 37) is denied.

Copies of this order shall be mailed to counsel of record for the parties.

IT IS SO ORDERED.